IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PETER RICHARD ROSA,

       Petitioner,

v.                                        CIV 07-0713 JH/CG

JOE R. WILLIAMS, Warden, et al.,

       Respondents.

# <u>PROPOSED FINDINGS<br>AND<br>RECOMMENDED DISPOSITION</u>

    Petitioner Peter Rosa is represented by counsel in this § 2254 habeas action. I held an evidentiary hearing on December 1, 2009. *See Doc. 121.* The hearing transcript and exhibits have been filed. Both parties submitted supplemental briefs and briefing is complete. *See Doc. 124* (hereinafter *"Evidentiary Hearing Transcript"*); *see also Docs. 120, 122, 126, 127, 129, 130.* Respondents' brief is comprehensive and well supported, and I incorporate it herein by reference. *See Doc. 130.* Based on the reasons and authorities cited by Respondents, I recommend that this action be dismissed with prejudice. To that, I add the following procedural rulings and other observations.

## I.  Procedural Background

    Petitioner was incarcerated when he participated in the murder of a wheelchair-

bound inmate.  He confessed his involvement – he held the victim while others stabbed the victim in excess of 200 times.  In exchange for the State's agreement not to seek the death penalty, Petitioner agreed to a bench trial.  The defense argued "provocation." That is, Petitioner participated in the crime because of the sexual advances the victim made toward him.  Under New Mexico law, a successful provocation defense reduces a murder charge from first or second degree murder to voluntary manslaughter, and carries a significantly lesser sentence.[1]  Petitioner testified at his bench trial.  District Judge John W. Pope found Petitioner guilty of first degree murder, tampering with evidence, and conspiracy to commit the same.  He imposed a life sentence.[2]

Judge Pope held an evidentiary in the state habeas proceedings in August 2006. *See e.g., Doc. 12-3* at 50.  Petitioner was represented by counsel.  Judge Pope's

---

[1]  As of 1994 in New Mexico, "if the death penalty is not involved, the basic sentences for the various degrees of homicide are sentences of not less than thirty years for first degree murder, fifteen years for second degree murder, six years for voluntary manslaughter, and one and one-half years for involuntary manslaughter."  *State v. Alvarado,* 123 N.M. 187, 189, 936 P.2d 869, 871 (N.M.App.,1997); *see also* N.M. STAT. ANN. §§ 31-18-14, 31-18-15 (sentencing statutes).  First degree murder requires proof of "deliberate intention to take away the life" of the victim; a "deliberate intention" means an intent "arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action;" though a "calculated judgment and decision may be arrived at in a short period of time, [a] mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill."  *New Mexico Uniform Jury Instruction* 14-201.  Second degree murder requires proof that a defendant "knew that his acts created a strong probability of death or great bodily harm [but] did not act as a result of sufficient provocation."  *Id.,* 14-210.  "The difference between second degree murder and voluntary manslaughter is sufficient provocation. In second degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation.  In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation."  *Id.,* 14-220.

[2]  *See e.g., Doc. 12-3* at 2, 4 (New Mexico Supreme Court opinion dated 8/29/01 affirming conviction direct appeal);  *Doc. 12-1* at 2 (Judgment and Sentence); *id.* at 16-17, 19-23 (Brief In Chief of Appellant); *Doc. 12-2* at 8, 38-49; (State of New Mexico's Answer Brief); *Doc. 12-3* at 53-54 (counseled petition for certiorari following denial of state habeas relief).

comments during the hearing explained, to some degree, the basis for his decision.[3]

His written decision issued in October 2006 was a summary finding.  In pertinent part, it

provides that "trial counsel provided effective assistance of counsel, and Petitioner's

other grounds for the granting of a writ are without merit, and the [state habeas] petition

is hereby denied."  *Id.*

The amended federal petition raises a total of five claims.[4]  Four are based on

ineffective assistance of trial counsel.  Claim One asserts that Petitioner's attorneys

failed to adequately inform him about the bench trial offer and, consequently, his waiver

of a jury trial was not "voluntary, knowing, and intelligent."  *Doc. 65* at 2.  Claim Two

asserts that his attorneys failed to adequately investigate and pursue an insanity

defense based on Petitioner's psychiatric history.  *Id.* at 7-8.  Claim Three similarly

asserts that his attorneys failed to adequately investigate Petitioner's mental health

issues and failed to use those issues as grounds to suppress Petitioner's confession.

*Id.* at 9.  Claims Four and Five concern the State's use of Petitioner's juvenile records at

trial.  *Id.* at 11-12.  Exhaustion is no longer an issue – Respondents concede that all of

---

[3]  Judge Pope commented that this case was similar to those where a defendant pleads guilty and then later seeks habeas relief because of remorse over their decision.  He was "not unsympathetic" to Petitioner because when the crime occurred he was nearing the end of his original long jail sentence.  After the crime, Petitioner and his attorneys became "caught in the . . . dance of litigation [that has] countervailing circumstances going both ways . . . as to what kind of decisions needed to be made."  Judge Pope could "see why those decisions were made – the pluses and minuses of them."  And while he could see how in hindsight one could question the decisions that were made, he "didn't see anything to indicate . . . that the decisions were wrong . . . so I'm going to deny the writ."  *See Record Proper* (audio recording of 8/17/06 hearing; at 3:00:28 to 3:02:49 on FTR player).

[4]  *See Doc. 65; see also Doc. 67* (holding Document 65 is "now the live pleading in this case").

the claims are exhausted.[5]

The federal proceedings were delayed in part because of the time it took to receive and review the state record proper and to appoint the Federal Public Defender as counsel. *See e.g., Docs. 11-14, 18-28.* Further delay ensued after the Federal Public Defender withdrew and Mr. Schydlower was appointed. It took eight months for Petitioner to file an amended petition. *See Docs. 31-68.* I then held several conferences and determined Petitioner could present "non-cumulative evidence" at a federal evidentiary hearing, *Doc. 71,* and asked Mr. Schydlower to "confirm [Petitioner's] availability to appear by telephone" for the hearing, *Doc. 89.*

Thereafter, by agreement of the parties, I held this action in abeyance to allow Judge Pope to issue specific findings of fact and conclusions of law. *See Doc 93.*[6] His findings were filed in October 2009. *See Doc. 103-2* (twenty-one page order memorializing specific findings and denying relief). The New Mexico Supreme Court denied certiorari in November 2009. *See Doc. 118.* I held an evidentiary hearing in December 2009, and ordered the parties to file post-hearing supplemental briefs. *See Docs. 121-22, 125-26, 128-29.*

_____

[5] *Compare Doc. 68* (asserting Claims One and Two only partially exhausted, but also asserting juvenile record claim is procedurally defaulted), *with Evidentiary Hearing Transcript* at 5 (counsel for Respondents "concede[d]" that the prior assertion of lack of exhaustion "is now moot because of the [New Mexico] Supreme Court's actions.").

[6] The relevant portion of my order provides: "Abeyance arises out of a suggested course of action over the course of two August 10, 2009 status conferences. *See* docket nos. 89 and 92. During the status conferences, counsel for Petitioner agreed that such action would be beneficial in this case. *See id.* The Court concurs with the parties and finds that specific findings of fact and conclusions of law from the state habeas corpus proceeding will assist the undersigned in her analysis and, ultimately, the recommended disposition." *Doc. 93* at 1.

## II.  Objections To The Federal Evidentiary Hearing Should Be Denied

Respondents objected to an evidentiary hearing, arguing Petitioner had shown that his federal claims rely "'on a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Doc. 55* (quoting U.S.C. § 2254(e)(2)(A)(ii)); *see also Doc. 69* (and authorities cited therein); *Doc. 108* (same); *Evidentiary Hearing Transcript* at 5 (reiterating objection).

The murder occurred in November 1997.  Petitioner was convicted and sentenced in February 2000.  *See Doc. 12-1* at 1.  The state proceedings did not conclude until December 2006.   The original federal petition was not filed until August 2007.  The time between the murder and initiation of federal proceedings was almost a decade.  Then the federal proceedings were delayed.  Respondents were not prejudiced by having a hearing.[7]   In fact, the federal hearing provides even further support for the denial of habeas relief.  Accordingly, I recommend that Respondents' objections to the evidentiary hearing should be denied.

Mr. Schydlower originally requested that Petitioner be transported from Florida to New Mexico to testify at the evidentiary hearing.  *See Doc. 77.*  He asserted that

[i]t is the duty of the Court to order production of the petitioner, and it is the

---

[7]  *See Doc. 69* at 5 ("In addition to being prohibited under § 2254(e)(2), a federal court evidentiary hearing would be contrary to the legislative purpose of expeditious resolution under AEDPA and would cause prejudice to Respondent.  Petitioner is trying to overturn a state conviction for a murder committed more than ten years ago.  Petitioner's goal is to obtain a retrial.  A delay of more than ten years before retrial would already prejudice Respondent, and further delay from an unwarranted evidentiary hearing would further delay any eventual retrial and further prejudice Respondent.  *Cf. Pagtalunan v. Galaza,* 291 F.3d 639, 642-43 ('Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.')  The State is also prejudiced if any relitigation of surrounding facts is allowed in the course of the habeas proceeding.").

right of the petitioner to be present at his hearing where there are
questions of facts to be litigated.  *United States ex rel. Griffin*, 310 F.
Supp. 72, 72 (E.D.N.Y. 1970), *citing Walker v. Johnson*, 312 U.S. 275, 61
S.Ct. 754, 85 L.Ed. 830 (1941) and *Albert ex rel. Bruice v. Patterson*, 155
F.2d 429 (1st Cir. 1946), *cert. denied* 329 U.S. 739, 67 S.Ct. 82, 91 L.Ed.
638 (1947).

*Id.* at 1-2.  His motion was denied as moot when the hearing had to be postponed.  *See*

*Doc. 93* at 2.  I subsequently determined that Petitioner could testify by telephone.  *See*

*Docs. 104, 106-1, 107-1.*  Just before the hearing, Petitioner "renewed his desire to be

here present," so Mr. Schydlower renewed his "objection to [Petitioner's] nonpresence

and reserve[d] any and all arguments . . . made in that regard previously."  *Evidentiary*

*Hearing Transcript* at 6.

I believe it is appropriate to have restricted Petitioner's participation to telephone

under *Goldberg,* which is a later decision from the Eastern District of New York that

contravenes the *Griffin* and *Walker* decisions Mr. Schydlower relied upon in his written

request, above.  *See id.* at 49.  The *Goldberg* decision reasoned in pertinent part:

In the years before the recent advances in communication
technology, the Supreme Court stressed that the production of the
prisoner at an evidentiary hearing is "[a] basic consideration in habeas
corpus practice" and "the crux of the statutory scheme established by
Congress; indeed, it is inherent in the very term 'habeas corpus.'"
*Johnson v. Eisentrager,* 339 U.S. 763, 778 (1950).  More than half a
century ago, in *Walker v. Johnston,* the Court declared:

[I]f an issue of fact is presented, the practice appears to
have been to issue the writ, have the petitioner produced,
and hold a hearing at which evidence is received.  This is,
we think, the only admissible procedure.  Nothing less will
satisfy the command of the statute that the judge shall
proceed 'to determine the facts of the case, by hearing the
testimony and arguments'.  It is not a question what the
ancient practice was at common law or what the practice
was prior to 1867 when the statute . . . was adopted by
Congress.

-6-

*Walker v. Johnston*, 312 U.S. 275, 285 (1941).  This was long before our federal courthouses were equipped with video and telephone conferencing systems.

Section 2243's provision requiring physical production of the prisoner should be interpreted with consideration of how flexibly courts have treated other requirements of section 2243 [such as] the statute's speediness requirements have not been observed literally . . .

* * * * *

Section 2243's directive that the petitioner's body be produced in court for an evidentiary hearing, if followed in any substantial proportion of state habeas cases, would place an intolerable strain on our federal and state prison systems.  As Justice Brennan observed in the context of a 28 U.S.C. § 2255 application, "[n]ot every colorable allegation entitles a federal prisoner to a trip to the sentencing court."  *Sanders v. United States,* 373 U.S. 1, 20 (1963).

Telephonic or video participation by a habeas petitioner does seem to run counter to the very term habeas corpus-have the prisoner's body in court.  Yet, it does lessen the almost impossible administrative burdens involved in the transportation of prisoners to and from a habeas court.  Whether a habeas petitioner appears in person or telephonically, a habeas court may maintain the necessary perspective that petitioner is a human being who deserves to be treated with fairness and dignity.

*Goldberg v. Tracy,* 247 F.R.D. 360, 392-93 (E.D.N.Y. 1/23/08), *adhered to on reconsideration,* 2008 WL 972721 (E.D.N.Y. 3/24/08) ("Reconsideration is granted. The court has reconsidered the issues.  There is no reason to change the decision."), *aff'd,* 2010 WL 537717 (2nd Cir. 2/17/10) (at footnote 1 noting that "The district court, having held an evidentiary hearing at which Goldberg appeared by telephone, also granted a COA on the following issues:  '[W]hether Goldberg had waived his physical production in court at the evidentiary hearing by failing to object,' and . . . . However, Goldberg failed to raise these issues on appeal, and he has therefore waived them.").

For obvious practical reasons given the delay in the federal proceedings and for

the reasons provided in the *Goldberg* decision, Petitioner's objection to his telephone participation should be denied.

## III.  Analysis Of The Claims

### A.  Claims Four and Five Are Abandoned

I ordered supplemental briefing on all five claims:  "MS. McLEAN:  . . .  And I'm going to assume the Court wants full briefing on all five issues raised in the amended petition?  THE COURT:  Right."  *Evidentiary Hearing Transcript* at 111; *see also Docs. 121-22.*  Petitioner's supplemental brief is specifically entitled "Brief Regarding Mental Health Issues Following Federal Evidentiary Hearing."  *Doc. 127* at 1.  Although counsel does not specifically state that Claims Four and Five are abandoned, given my requirement for briefing and the caption and content of Petitioner's brief, it is now plain that he has abandoned them.  Accordingly, I do not address them.

### B.  Petitioner's Request For De Novo Review
### Is An Independent Basis To Dismiss

Because Petitioner filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case.  *E.g., AbdulKabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008).  Respondents' brief sets out those standards in detail.  *See Doc. 130* at 2-8.  I further note that, for AEDPA purposes, it does not matter whether I am reviewing Judge Pope's summary reasoning or later detailed findings.

Because he decided the ineffectiveness claims on the merits, either disposition is entitled to AEDPA "deference."  As the Tenth Circuit recently reiterated,

If a claim was addressed on the merits by the state courts, we may not

> grant federal habeas relief on the basis of that claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). . . . "This standard does not require our abject deference, but nonetheless prohibits us from substituting our own judgment for that of the state court." *Snow,* 474 F.3d at 696 (internal quotation marks and citation omitted).
>
> If a claim was not resolved by the state courts on the merits and is not otherwise procedurally barred, our standard of review is more searching. That is, . . . § 2254(d)'s deferential standards of review do not apply in such circumstances.

*Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010). But, even for summary

dispositions, AEDPA review is not *"de novo:"*

> this court has held that deference to a state court decision on the merits of a federal claim is appropriate even when the state court does not expressly articulate a rationale for its decision.
>
> > [W]e must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. This "independent review" should be distinguished from a full *de novo* review of the petitioner's claims. Our review is in fact deferential because we cannot grant relief unless the state court's result is legally or factually unreasonable.
>
> *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir. 1999). Also, a state court adjudicates the merits of a federal claim for purposes of AEDPA deference even if it decides the claim without citing the controlling Supreme Court precedent. *Harris v. Poppell,* 411 F.3d 1189, 1195 (10th Cir. 2005).

*Sandoval v. Ulibarri,* 548 F.3d 902, 908-09 (10th Cir. 2008), *cert. denied,* 130 S. Ct. 133

(2009).

Respondents note that "Petitioner seeks relief pursuant to 28 U.S.C. § 2254 yet

fails to acknowledge the governing standards of review [and] neglects to address the

state court adjudications and findings." *Doc. 130* at 2.  Petitioner did not file a reply, so he has not challenged this observation or cured the defect pointed out by Respondents.[8]  Petitioner bears the burden of establishing that he is entitled to relief under the AEDPA standards.  Because his apparent position is that this Court is to engage in a *de novo* review of his claims, his petition should be dismissed on that basis alone.  *C.f., Turrentine v. Mullin,* 390 F.3d 1181, 1188 (10th Cir. 2004) ("Under AEDPA, a petitioner is entitled to federal habeas relief **only if he can establish** that the state court decision was 'contrary to, or involved an unreasonable application of . . . ' or was 'based on an unreasonable determination of the facts  . . .') (emphasis added).  Alternatively, the three remaining claims are without merit.

### C.  AEDPA Standards For Petitioner's Ineffectiveness Claims

Clearly established Supreme Court precedent is "dispositive" of the § 2254(d)(1) analysis – "only if we determine that the law is clearly established do we inquire whether the state court decision is either contrary to or an unreasonable application of that law." *Fairchild v. Workman,* 579 F.3d 1134, 1139 (10th Cir. 2009).  As for whether the law is "clearly established," federal habeas "courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts."  *Lambert v. Workman,* 594 F.3d 1260, 1263 (10th Cir. 2010).

[If a petitioner] has not cited, nor have we found, any Supreme

---

[8] *See Doc. 129* (granting Respondents unopposed motion for an extension and providing:  "Respondents shall have up to May 13, 2010 to file their supplemental brief. Petitioner shall file his supplemental reply, if any, within seven days of Respondents' supplemental brief.  NO FURTHER EXTENSIONS WILL BE GRANTED.") (emphasis original). Respondents filed their supplemental brief on May 13, 2010 and to-date Petitioner has not filed a reply.

> Court authority clearly establishing the. . . principles at issue here[,]
> [u]nder the AEDPA standards set out above, that is fatal to his claim.
> Unless and until the Supreme Court decides [the issue] habeas relief on
> this basis is unavailable, and it is not the province of this court to resolve
> the issue . . .

*Id.*

Where, as here, however, there is no "Supreme Court precedent establishing the [ineffectiveness] rule" that Petitioner asserts in his claims, this Court "retreats to the general *Strickland* standard." *Crawley v. Dinwiddie,* 584 F.3d 916, 921-22 (10th Cir. 2009) (citing *Knowles v. Mirzayance,* ___U.S. ___, ___, 129 S. Ct. 1411, 1419 (2009)). That is, Petitioner must show counsel's conduct was constitutionally deficient and that, but for the conduct, the result of the proceeding would have been different.  Failure to make either showing defeats the claim.  *E.g., Smith v. Robbins,* 528 U.S. 259, 285-86 & n.14 (2000); *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  "'[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.'"  *Crawley,* 584 F.3d at 922 (quoting *Knowles,* 129 S. Ct. at 1420, which in turn cites *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).  The federal review is thus "doubly" deferential:

> . . . when evaluating an ineffective assistance of counsel claim
> under § 2254(d)(1), our review is "doubly deferential." . . .  We defer to the
> state court's determination that counsel's performance was not deficient
> and, further, defer to the attorney's decision in how best to represent a
> client.  *See id.; see also Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003) (per
> curiam).  In *Knowles,* the Court explained:

>> The question is not whether a federal court believes the
>> state court's determination under the *Strickland* standard
>> was incorrect but whether that determination was
>> unreasonable – a substantially higher threshold.  And
>> because the *Strickland* standard is a general standard, a
>> state court has even more latitude to reasonably determine

-11-

that a defendant has not satisfied that standard.

129 S. Ct. at 1420 (quotations and citation omitted); *see also Yarborough,*
541 U.S. at 664 ("The more general the rule, the more leeway courts have
in reaching outcomes in case-by-case determinations.").

*Id.*

Implicit in Judge Pope's summary denial of state habeas relief is that he fully

accepted trial counsels' testimony and did not accept Petitioner's testimony in arriving at

his decision that trial counsel's chosen strategy was not ineffective.  Moreover, the

parties agreed that Judge Pope's expanded findings should be the findings subject to

AEDPA review and in them he made explicit credibility findings.[9]  Credibility

---

[9]   Nothing in the federal record that suggests that Judge Pope did not personally draft
his expanded findings.  Even if he did not, his findings "should be treated as finding of the
court."  *Jefferson v. Upton,* ___ U.S. ___, 2010 WL 2025209 at * 7 (5/24/10) (per curiam).  The
Supreme Court has criticized the practice of "a court's 'verbatim adoption of findings of fact
prepared by prevailing parties.'"  *Jefferson v. Upton,* ___ U.S. ___, 2010 WL 2025209 at * 7
(5/24/10) (per curiam)  The *Jefferson* decision quotes *Anderson v. City of Bessemer City, N.C.,*
470 U.S. 564, 572 (1985) and *Anderson* specifically held:

We, too, have criticized courts for their verbatim adoption of findings of fact
prepared by prevailing parties, particularly when those findings have taken the
form of conclusory statements unsupported by citation to the record. . . .  We are
also aware of the potential for overreaching and exaggeration on the part of
attorneys preparing findings of fact when they have already been informed that
the judge has decided in their favor. . . .  Nonetheless, our previous discussions
of the subject suggest that even when the trial judge adopts proposed findings
verbatim, the findings are those of the court and may be reversed only if clearly
erroneous.

*Id.*  (citing *United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656-657 (1964), *United
States v. Marine Bancorporation,* 418 U.S. 602, 615, n. 13 (1974), and J. Wright, The Nonjury
Trial-Preparing Findings of Fact, Conclusions of Law, and Opinions, Seminars for Newly
Appointed United States District Judges 159, 166 (1962)).

Having listened to the state evidentiary hearings in their entirety, I cannot find that the
*Anderson* Court's concerns about conclusory and unsupported or overreached and exaggerated
findings are at issue here.  Likewise, nothing in the federal record indicates that the situation
concerning the *Jefferson per curiam* is present in this case.  Even if they were, the *Jefferson*
decision expressed no opinion on the implications for habeas review.  *See* 2010 WL 2025209 at

determinations are "historical facts" subject to AEDPA's "presumption of correctness."

A federal habeas court "presume[s] correct state court findings with respect to basic,

primary, or historical facts:  facts in the sense of a recital of external events and the

credibility of their narrators."  *Fisher v. Gibson,* 282 F.3d 1283, 1290 (10th Cir. 2002).[10]

To overcome the presumption, "a habeas petitioner must rebut the presumption  by

clear and convincing evidence."  *Duty v. Workman,* 2010 WL 533117 at * 5 (10th Cir.

2010) (citing 28 U.S.C. § 2254(e)(1)).  "'[A] state-court factual determination is not

unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance.'"  *Id.* (quoting *Wood v. Allen,* ___ U.S. ____, , 130 S. Ct.

841, 849 (2010)).

### D.  Petitioner's Claims Are Without Merit

It is plain from the testimony of trial counsel at the state evidentiary hearing and

from Judge Pope's findings that Petitioner's trial attorneys were fully aware of his long

psychological history through his prison medical records.  *See Doc. 103-2* at 20.  Thus,

his "failure to investigate" allegations are based on a narrow argument – that trial

counsel did not order additional testing.  They explained why they did not do so, and

Judge Pope agreed.  *See id.* at 17-18.  Petitioner does not argue that Judge Pope's

---

* 7 ("we have not considered the lawfulness of, nor the application of the [the presumption of correctness section of the earlier version of 2254] to, the use of such a practice where (1) a judge solicits the proposed findings *ex parte,* (2) does not provide the opposing part an opportunity to criticize the findings or to submit his own, or (3) adopts findings that contain internal evidence suggesting that the judge may not have read them.").

[10]  Fisher's internal quotations to *Williamson v. Ward,* 110 F.3d 1508, 1513 (10th Cir. 1997) are omitted.  *Williamson,* in turn, notes that the presumption of correctness doctrine is the same pre- and post-AEDPA, and that the above proposition appears in *Townsend v. Sain,* 372 U.S. 293, 309 n. 6 (1963).

credibility and other historical factual findings should not be presumed correct.  And, the

testimony and exhibits he presented at the federal hearing do not come close to

meeting the clear and convincing standard.

      I find Petitioner's testimony at the federal hearing was not credible when he

asserted that he did not understand that his attorneys were going to pursue a

"provocation" rather than "insanity" defense, and that he did not voluntarily and

knowingly waive his right to a jury trial.  Both in the state and  federal hearings,

Petitioner responded to questions with ease, and never faltered or hesitated in his

articulate and nuanced answers.

      For example, he testified that his agreement to a bench trial was not voluntary or

intelligent because he had to decide quickly and did not know that one of his attorneys

had reservations about a bench trial.  *See Doc. 127* at 11-15.  Yet, as he did in the state

hearing, he indicated that he decided to waive a jury trial was because of the impact the

photos of the victim could have had on a jury:

> A.  Yes. I had discussed that with a Stephen Aarons.
> Q.  What was the nature of that discussion?
> A.  The nature of that discussion was Stephen Aarons ultimately told me
> that if the jury had seen the photographs, it was going to be an automatic
> conviction; where Judge Pope has seen things like that before and wasn't
> receptive or, you know, prejudiced by that, by the photographs.
> Q.  Was that discussion helpful in your decision whether or not to waive
> the jury trial in exchange for dropping the death penalty?
> A.  I think that discussion itself – I think that is what kind of pushed me to
> waiving jury trial. I mean, to pressure me like that; say, Look, if the jury
> sees the photographs, it's an automatic conviction. There's nothing you
> can do. I mean, it's kind of persuasive, you know.

*Evidentiary Hearing Transcript* at 76-77.  Rather than being "unintelligent" or "coerced,"

his decision to waive the jury is perfectly understandable in light of the photographs.  It

is even more so when coupled with the confession Petitioner made to the police and the other evidence against him.  That is, "besides my confession, it was the -- just a pair of bloody clothes with my DC numbers, you know, was all the evidence.  That, and two co-defendants, I guess, gave statements."  *Id.* at 71.  He admitted that this confession was "damning."  *Id.* at 71.  Among other things, in it he confessed that, after wrapping his hands in bandages and gloves, he restrained and muffled a paraplegic who was confined to a wheelchair for five to ten minutes while two others stabbed him "230 times."  *Id.*

The New Mexico Supreme Court found that under the "totality of the circumstances" Petitioner's confession was voluntary.  *See Doc. 65-2* at 10.  Judge Pope adopted that finding, adding that trial counsel were "fully aware of the medications" Petitioner was taking and the Judge Pope did not observe any "adverse impact of any psychotropic medications on [Petitioner's] behavior or comprehens[ion] of the proceedings."  *Doc. 103-2* at 20; *see also id.* at 8 ("No adverse impact of any psychotropic medications was noted by this Court or defense counsel during the criminal proceedings.  [Petitioner] appeared fully aware of the circumstances and later throughout the criminal proceedings.  [Petitioner's] testimony at the bench trial was cogent.").  Again, this credibility and historical factual finding are not challenged.

In addition, the *Rossillo* and *Cole* decisions cited by Petitioner afford no basis for habeas relief.  *See Doc. 127* at 10-11 (citing *United States v. Rossillo,* 853 F.2d 1062 (2nd Cir. 1988) and *United States v. Cole,* 813 F.2d 43 (3rd Cir. 1987)).  It is well-settled by binding authority that Rule 11 does not apply in state proceedings and is not coextensive with the federal constitution.  *E.g., Miles v. Dorsey,* 61 F.3d 1459, 1466-67

(10th Cir.1995); *Warren v. Gartman,* 297 Fed. App'x. 767, 769 (10th Cir. 2008) (and

authorities cited therein), *cert. denied,* 129 S. Ct. 951 (2009); *Berget v. Gibson, 1999*

WL 586986 (10th Cir. 1999) (same).  And, the mere fact that a criminal defendant is

taking drugs, even psychotropic ones, during a plea or other waiver proceeding is not

dispositive in the habeas context, particularly given Judge Pope's findings.  The findings

that drugs had no effect on Petitioner and thus did not impact his decision to waive the

jury trial are entitled to deference.  *C.f., Jarrell v. Jordan,* 7 Fed. App'x 852, 853-54 (10th

Cir. 2001) ("Based on the testimony at the hearing and the form, the state court found

that the guilty pleas were knowing and voluntary.  We must presume this factual finding

to be correct, 28 U.S.C. § 2254(e)(1), and petitioner has provided nothing but

conclusory allegations to challenge this finding.").  As another court has acknowledged,

"the mere fact" that a petitioner suffers mental ailments at the time of the decision at

issue " and the condition "requires treatment with psychotropic medications, does not

establish that he was mentally incapacitated during the [relevant] proceeding."  *Wright v.*

*McNeil,* 2009 WL 700308 at * 10 (S.D.Fla. 2009).   Indeed, "the fact that petitioner may

have at times needed psychotropic medications weighs more in favor of him being able

to function than not.  *Id.* (citing *Brown v. McKee,* 232 F.Supp. 761, 768 (E.D. Mich.

2002)).

Also, it is plain from both evidentiary hearings that Petitioner's main concern was

the sentence he would receive.  Both before trial, after sentencing and now, his goal

was to avoid a first-degree murder conviction with its attendant life sentence.  For

example, Petitioner introduced his prison medical records at the federal hearing to

establish that:  he has suffered from auditory hallucinations that tell him to harm himself

or others since he was a boy; the psychotropic and other medications he has taken

lessen, but do not completely eliminate the auditory commands; and that several

months before the murder he quit taking his medications.  Those medical records

underscore Petitioner's main goal.  He told his therapist that he would rather suffer the

death penalty than spend the rest of his life in prison.

> Q. . . . What did you perceive the various scenarios to be?
> A.  Well, again, I mean, the various scenarios were, okay, you know, the
> death penalty, life imprisonment, or, you know, something lesser than life,
> or maybe an acquittal. I mean, those were all the major scenarios that I
> discussed with my psych.

*Id.* at 104; *see also id.* at 12-42; *Evidentiary Exhibits* 1-10.

He also understood, however, that an insanity defense would not necessarily

meant acquittal,[11] but he hoped that it would at least take him out of the realm of first-

degree murder and hopefully into a much lesser penalty scenario.  For example he

testified:

---

[11]   Under the statute at the time, now repealed entirely, a sentence for a "'guilty but
mentally ill" conviction could be "any sentence upon a defendant which could be imposed
pursuant to law upon a defendant who has been convicted of the same offense without a finding
of mental illness; provided'" and, therefore, would not have advanced Petitioner's desire for the
least sentence possible.  *State v. Neely,* 112 N.M. 702, 704 n.2 819 P.2d 24, 251 n.2 (N.M.
1991) (quoting New Mexico Statute § 31-9-4, repealed by L. 2010, Ch. 97, § 1, eff. May 19,
2010); *see also appeal after remand,* 117 N.M. 707, 711, 876 P.2d 222, 226 (N.M. 1994)
(Montgomery, Chief Justice, specially concurring) ("I concur, with the greatest reluctance, in the
majority's holding that a district court does not have discretion to modify a mandatory sentence
of life imprisonment for commission of a capital felony, even when the defendant has been
found guilty but mentally ill."); *denial of habeas corpus affirmed by Neely v. Newton,* 149 F.3d
1074 (10ᵗʰ Cir. 1998) (sentencing scheme does not violate Eighth Amendment), *cert. denied,*
525 U.S. 1107 (1999).

Likewise, a successful "insanity" defense held no assurances that Petitioner would be
released.  In that event, he could have faced a civil commitment of uncertain duration.  *See
Neely,* 112 N.M. at 257, 819 P.2d 710 ("A not guilty by reason of insanity verdict does not result
automatically in the defendant's confinement-the district attorney is not required to pursue civil
commitment proceedings. . . .  Commitment depends upon evaluation of the defendant's mental
state at the time of proceedings and is not for any definite period of time.").

A.  I believe that had -- yes, the insanity defense been presented and had Judge Pope heard it, that, yes, I probably would have been acquitted of first-degree murder.

*Id.* at 74.

Q.  Do you think your mental health records would have presented a favorable defense?
A.  Had it been presented, I believe they would have, yes.
Q.  And how would they have been favorable?
A.  In at least relieving me of the burden of a first-degree conviction. I mean, the mental health jacket could have at least explained my suicidal ideation and homicidal ideations and could have helped me to a lesser verdict -- a lesser charge.
Q.  And the lesser charge of what? A. Of second-degree murder, involuntary manslaughter.

*Id.* at 75.[12]

Q.  And would you agree, Mr. Rosa, that insanity requires the commission of the actual act?
MR. SCHYDLOWER:  Objection. Again, these are legal questions.
THE COURT:  If he knows them, he can answer.
MR. SCHYDLOWER:  I'm objecting because it calls for a legal conclusion.
THE COURT:  If you can answer, Mr. Rosa, answer.  If you can't, let her

---

[12]  Given that there was no question Petitioner held the victim during the stabbing, involuntary manslaughter was not an option.  *See State v. Gutierrez,* 88 N.M. 448, 451, 541 P.2d 628, 631 (N.M. App. 1975) I("Involuntary manslaughter requires a killing either 'in the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death . . . ' Inflicting a beating is an unlawful act. . . .  Accordingly, there is no basis for an instruction on involuntary manslaughter by lawful act.  It is not seriously contended that defendant's unlawful act did not amount to a felony.  Accordingly, there is no basis for an instruction on involuntary manslaughter by unlawful act not amounting to a felony."); *see also State v. Fero,* 105 N.M. 339, 344, 732 P.2d 866, 871 (N.M.,1987) ("Fero claims that the jury should have been instructed on involuntary manslaughter, because he introduced evidence that the killing was committed without "knowledge" of what he was doing.  This argument rests on a misreading of our opinion in *State v. Beach* [where] this Court expressly held that the instruction on diminished capacity could not extend to reduce a charge of second degree murder. . . .  There are two further flaws in Fero's position, moreover.  The first is that the evidence does not support Fero's contention that he did not "know" that his acts created a strong probability of death or great bodily harm, which knowledge is required for second degree murder. If such evidence had existed, Fero would have been entitled to an instruction on insanity, not on manslaughter. . .  Second, the instruction Fero did request was for involuntary manslaughter resulting from an unlawful act, not a felony. . . .  The facts simply do not appear to fit this definition, nor does Fero convince this Court that they might fit.").

know.
A.  I can answer because I placed it in my petition that I do believe that
even though pursuing a mental health defense would, in effect, admitted
my guilt, it still would have negated the requisite mens rea that was
needed to find me guilty of first-degree.
Q.  (BY MS. McLEAN) Did you equate the insanity defense with an
acquittal?
A.  To a certain point, I mean, the insanity defense could have been an
acquittal. I mean, I could have been found guilty, but -- or not guilty by
reason of insanity. I mean, so in a sense, it could have been an acquittal.

*Id.* at 86-87.

Thus, regardless of whether he was tried by "the jury, to the Court, whoever" he

"was hoping that" an insanity defense would have "helped relieve me of the burden of

first degree murder," *id.* at 47.  Yet, Petitioner admittedly rejected a plea offer to a fifteen

year sentence for second degree murder.  *Id.* at 46.  Thus, trial counsel were acting

consistently with Petitioner's witnesses when they attempted to establish voluntary

manslaughter.  It not only carried the lowest potential sentence,[13] but also has as one of

---

[13]  Given that there was no question Petitioner held the victim during the stabbing,
involuntary manslaughter was not an option.  *See State v. Gutierrez,* 88 N.M. 448, 451, 541
P.2d 628, 631 (N.M. App. 1975) I("Involuntary manslaughter requires a killing either 'in the
commission of an unlawful act not amounting to felony; or in the commission of a lawful act
which might produce death . . . ' Inflicting a beating is an unlawful act. . . .  Accordingly, there is
no basis for an instruction on involuntary manslaughter by lawful act.  It is not seriously
contended that defendant's unlawful act did not amount to a felony.  Accordingly, there is no
basis for an instruction on involuntary manslaughter by unlawful act not amounting to a felony.");
*see also State v. Fero,* 105 N.M. 339, 344, 732 P.2d 866, 871 (N.M.,1987) ("Fero claims that the
jury should have been instructed on involuntary manslaughter, because he introduced evidence
that the killing was committed without "knowledge" of what he was doing.  This argument rests
on a misreading of our opinion in *State v. Beach* [where] this Court expressly held that the
instruction on diminished capacity could not extend to reduce a charge of second degree
murder. . . .  There are two further flaws in Fero's position, moreover.  The first is that the
evidence does not support Fero's contention that he did not "know" that his acts created a
strong probability of death or great bodily harm, which knowledge is required for second degree
murder. If such evidence had existed, Fero would have been entitled to an instruction on
insanity, not on manslaughter. . .  Second, the instruction Fero did request was for involuntary
manslaughter resulting from an unlawful act, not a felony. . . .  The facts simply do not appear to
fit this definition, nor does Fero convince this Court that they might fit.").

-19-

its elements "provocation" – the very thing he explained to his trial attorneys.

> Q.  And what's your understanding of voluntarily manslaughter?
> A.  My understanding, I believe it's nine years.
> Q.  But the actual elements of voluntarily manslaughter, Mr. Rosa. A. I
> don't know what the elements are.
> Q.  If I told you one of the elements was provocation, would you
> understand voluntarily manslaughter to be a lesser-included charge of
> first-degree murder?
> A.  Yes.
> Q.  And, in fact, one of your statements -- not your confession, but your
> statements to your attorneys -- did, in fact, implicate some sort of sexual
> provocation by Mr. Lucero?
> A.  Yes. I had told them that he did attempt to sexually abuse me.
> Q.  And that was different than your actual confession; is that true?
> A.  Yes, it is.

*Id.* at 66.

In carrying out a strategy that comported with Petitioner's wishes and rendition of

the facts it is true that "trial counsel's strategy failed, but a failed strategy does not

establish that trial counsel's strategy was unreasonable at the time it was made."

*Chambers v. Beard,* 2009 WL 2191748, 27 (M.D. Pa. 2009).

For the above reasons as well as the reasons stated in Respondents' brief, I

agree that Judge Pope's rejection of the ineffectiveness claims are not "contrary to" or

"unreasonable" under *Strickland, see Doc. 130* at 8-24, and that there is "no reasonable

probability . . . that the outcome of the bench trial would have been different," *Doc. 103-*

*2* at 21.  Neither of the *Strickland* prongs have been established here.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1.      Respondents' objections to the federal evidentiary hearing be denied;

2.      Petitioner's objection to his participation in the federal hearing by
        telephone be denied;

3.      The sole three remaining issues be denied as without merit; and

4.      This action be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE