IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PETER RICHARD ROSA,

        Petitioner,

v.                                                         CIV 07-0713 JCH/CG

JOE R. WILLIAMS, Warden, et al.,

        Respondents.

### ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

The Magistrate Judge filed her Proposed Findings and Recommended Disposition on June 15, 2010.  *See Doc. 131.*  Petitioner filed two sets of objections, which I have carefully reviewed *de novo.  See Garcia v. City of Albuquerque,* 232 F.3d 760, 766-67 (10th Cir. 2000); *see also Docs. 132, 133.*

The first document raises an issue about the procedures used to identify the exhausted claims.  The procedures had no adverse affect on the federal proceedings, particularly where, as here, Petitioner is represented by counsel.  Therefore, I find the objection without merit.  *See Doc. 132.*

As for the other objection to a procedure employed by the Magistrate Judge, I reject the assertion that it was error to have Petitioner appear at the federal evidentiary hearing by telephone.  For the same reasons as the Magistrate Judge mentioned in her proposed findings, the decisions Petitioner cites in this regard are not persuasive.  *See*

*Doc. 131* at 6-8; *Doc. 133* at 3.

As for the substantive objections concerning the significance of the evidence introduced at the federal hearing, I also find them without merit. I disagree that this evidence renders the state trial judge's findings "clearly erroneous," supports a claim that trial counsel's conduct was ineffective, or would have altered the outcome of the state proceedings in any way. *See Doc. 133* at 3-20.

As for waiver of Claims Four and Five, which are challenges the use of juvenile records at trial, I agree that they are waived. The merits of these two claims have not been clearly identified at any point in the federal proceedings. The amended petition raises them in a cursory manner and the substance of the claims was not briefed after the federal hearing.[1] Indeed, even in his objections counsel fails to explain the

---

[1] The amended petition concerning these claims provides in full:

CLAIM FOUR: TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO TIMELY OBJECT TO THE STATE'S CROSS-EXAMINATION OF HIS CHARACTER WITNESSES WITH RESPECT TO ROSA'S JUVENILE RECORDS

29. Rosa alleges in Claim Four that his trial counsel was ineffective in failing to object to damaging cross examination questions posed to Rosa's character witnesses based on Rosa's juvenile records. This claim was raised in Rosa's state habeas petition and in his state petition for writ of certiorari, both of which were summarily denied without explanation by the state trial court and the New Mexico Supreme Court, respectively. (Doc. 3-2, at 19; Doc. 3-3, at 10; Doc. 3-2, at 39; and Doc. 3-3, at 12.)
33. Lamentably, the defense theory at trial was that Rosa's participation in the murder was provoked by an alleged attempted sexual assault by a presumably impotent wheelchair-bound inmate. To the extent that the defense attempted to bolster this defense theory by excluding any reference to Rosa's past criminal history, trial counsel's failure to object to the damaging cross-examination questions based on late-disclosed juvenile records alerted the fact finder to Rosa's juvenile past, emasculating this defense theory.

CLAIM FIVE: THE STATE FAILED TO DISCLOSE ROSA'S JUVENILE RECORDS UNTIL TWO DAYS INTO TRIAL

30. Rosa alleges in claim five that the prosecution obtained copies of Rosa's juvenile records but failed to timely tender copies to Rosa, prejudicing Rosa's defense. This claim was raised in and addressed by the New Mexico Supreme Court on direct appeal. (Original Criminal Pleadings File, Vol. 2, pp. RP 398).
31. Rosa alleges that the State obtained copies of Rosa's juvenile records and failed to

substance of the claims or why there is any merit to them.[2]  Counsel suggests that there was no need to brief the juvenile record issues because "it was only Petitioner's mental health history that was at issue during the [federal] evidentiary hearing."  *Doc. 133* at 2.  I find this somewhat disingenuous since one of the exhibits counsel introduced at the federal hearing is a mental health record from when Petitioner was a juvenile.  He had been arrested for shooting his parents and this document recounts Petitioner's juvenile arrests and dispositions in detail.  *See, e.g., Doc. 120-1* at 2;  *Doc. 24* at 13, 18, (Evidentiary Hearing Transcript).

In any event, the "juvenile record" claims ignore the fact that Petitioner waived a jury and was convicted after a bench trial.  For the various reasons in the state judge's decision, the Magistrate Judge's proposed findings, and other state documents, I find that trial counsel was aware of Petitioner's troubled youth and that utterly no prejudice flowed from (1) any belated production of a juvenile psychological evaluation that listed juvenile offenses or (2) asking Petitioner's mother and best friend if they were aware of

---

> tender copies of these records to Mr. Rosa until two days into Rosa's trial. By the time the records had been disclosed, Rosa's counsel had already put on evidence seeking to establish Rosa's good character.  The defense, unaware of the evidence the State obtained regarding Rosa's juvenile records, was prejudiced in its ability to adequately and strategically mount its defense.

*Doc. 65* at 11-12.

[2]  *See United States v. Garfinkle,* 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.");  *Marshall v. Chater,* 75 F.3d 1421, 1426-27 (10th Cir. 1996) (same; citing cases that hold "'an unsuccessful party is not entitled as of right to *de novo* review . . . of an argument never seasonably raised before the magistrate'" and "'[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act'").

Petitioner's trouble with the law.[3]

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Magistrate Judge's Proposed Findings and Recommended Disposition *(Doc. 131)* is ADOPTED;

2. The § 2254 petition is dismissed **with prejudice;** and

3. A final order enter concurrently herewith.

_____
UNITED STATES DISTRICT JUDGE

---

[3] Briefing on direct appeal indicates that during cross-examination the prosecutor asked about "incidents in Defendant's past" and "seemed to be reading from something" that turned out to be a "psychological evaluation of Defendant performed when he was seventeen." *Doc. 12-2* at 24. The document habeas counsel introduced at the federal hearing is incomplete and does not contain a date, but was said to have been from an evaluation in 1995. *See Doc. 120-1* at 2; 124 at 12-13. It is not clear whether the document at trial is the same introduced at the federal hearing. However, I note that Petitioner - inmate number 123998" – was born in March 1978 and thus would have been seventeen years old in 1995. *See Doc. 1* at 1 (federal petition bearing inmate number); www.dc.state.fl.us/AppCommon/ (Florida Department of Corrections inmate population information list showing Petitioner's date of birth and other information).

At every stage, the claims concerning the juvenile records have been dismissed as harmless. *See, e.g., Doc. 12-1* at 30-34 (briefing on direct appeal); *Doc. 12-2* at 23-34 (same); *Doc. 12-3* at 3 (New Mexico Supreme Court's decision on direct appeal that juvenile record arguments were waived for failure to object and even if "Defendant had tendered a timely objection, and error had occurred, such error would be deemed harmless"); *Doc. 103-2* at 7, (ineffectiveness claim based on trial counsel's failure to object to the juvenile records being disclosed late or to use of them in cross-examination of defense character witnesses rejected on ground that any error was harmless); *Doc. 131* at 13 ("It is plain from the testimony of trial counsel at the state evidentiary hearing and from Judge Pope's findings that Petitioner's trial attorneys were fully aware of his long psychological history through his prison medical records) (citing *Doc. 103-2* at 20).

Petitioner himself testified that he did not think the juvenile records were "damaging to [his] cause" because they "kind of reflect, you know, my mental health status . . . the trouble I was getting into and the attention I was looking for when I was a juvenile . . . three times I ran away from home . . . all that stuff is essentially in my juvenile record, and that could have been used, you know, to help bolster my mental health state." *Doc. 124* at 98.